**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **EARNEST SHIELDS,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **GERARDO ACEVEDO, individually,** | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| **ARTHUR FUNK, M.D., individually and** | )     No. 10 C 3746 |
| **as agent of Wexford Health Sources, Inc.,** | ) |
| **RICHARD SHUTE, M.D., individually** | ) |
| **and as agent of Wexford Health Sources,** | )     Judge Ronald A. Guzmán |
| **Inc., ROBERT MIGLIORINO, D.O.,** | ) |
| **individually and as agent of Wexford** | ) |
| **Health Sources, Inc., RONALD** | ) |
| **SCHAEFER, M.D., individually and as** | ) |
| **agent of Wexford Health Sources, Inc.,** | ) |
| **SOUTHERN ILLINOIS UNIVERSITY** | ) |
| **SCHOOL OF MEDICINE, DAVID J.** | ) |
| **OLYSAV, M.D., individually and as** | ) |
| **agent of Southern Illinois University** | ) |
| **School of Medicine, JOHN FROELICH,** | ) |
| **M.D., individually and as agent of** | ) |
| **Southern Illinois University School of** | ) |
| **Medicine,** | ) |
| | ) |
|     **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has sued defendants Wexford Health Sources, Inc. and four of its current or former employees, Drs. Arthur Funk, Richard Shute, Richard Migliorino and Ronald Schaefer, Southern Illinois University School of Medicine ("SIU") and its current or former employees, Drs. David J. Olysav and John Froelich, and Gerardo Acevedo, former warden of Hill Correctional Center, pursuant to 42 U.S.C. § 1983 for their alleged violations of his Eight Amendment rights and SIU, Olysav and Froelich for negligence. Defendants have filed motions pursuant to Federal Rule of Civil Procedure

56(c) for summary judgment. For the reasons set forth below, the Court grants the motions of Acevedo, Wexford, Funk, Migliorino, Shute and Schaefer, grants in part the motions of SIU, Olysav and Froelich and declines to exercise supplemental jurisdiction over the state law claims plaintiff asserts against SIU, Olysav and Froelich.

**Facts**

Defendant Wexford is private corporation that provides health care services to inmates of Hill Correctional Center and other facilities of the Illinois Department of Corrections ("IDOC"). (Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶ 2.) At the times relevant to this suit, defendant Acevedo was the warden of Hill. (Pl.'s Resp. Acevedo's LR 56.1(a) Stmt. ¶ 4.) Defendants Funk, Shute, Migliorino and Schaefer are or were employed by Wexford as regional medical director, traveling physician, medical director of Hill and rotating medical director, respectively. (Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶¶ 3-6.) Defendants Olysav and Froelich are or were employed by SIU. (Pl.'s Resp. Froelich's LR 56.1(a) Stmt. ¶¶ 4-6.)

On June 16, 2008, while he was an inmate at Hill, plaintiff injured his shoulder. (Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶ 8.) Migliorino examined plaintiff the same day, diagnosed him with a possible dislocated shoulder and sent him to the emergency room. (*Id.* ¶ 9.) An MRI taken at the emergency room showed a partial tear of the supraspinatus tendon. (*Id.* ¶ 10.) Consequently, Migliorino recommended that plaintiff be seen by an orthopedic surgeon, a recommendation that Funk approved. (*Id.* ¶ 11.)

On June 23, 2008, plaintiff was evaluated by an orthopedist chosen by IDOC, Dr. Schierer. (*Id.* ¶¶ 12-13, 15.) Schierer diagnosed plaintiff with a ruptured left pectoralis tendon and recommended that he see a shoulder specialist. (*Id.* ¶ 15.)

On July 3, 2008, Funk approved the request for plaintiff to see a shoulder specialist. (*Id.* ¶ 19.)

On August 8, 2008, plaintiff saw Dr. Clark, another orthopedist chosen by IDOC, who recommended that plaintiff be examined by another specialist, Dr. Gibbons. (*Id.* ¶¶ 20-22.) Migliorino approved the recommendation, but Gibbons told Hill's Medical Records Department that he did not "feel comfortable doing [t]his surgery." (*Id.* ¶ 23; Wexford's Ex. E, Medical Records at 10.)

Natalie Williams of Hill's Medical Records Department than contacted Jan Siebel at Wexford to find another shoulder specialist. (Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶ 25.) Siebel identified Olysav as the specialist. (*Id.* ¶ 26.)

On August 26, 2008, plaintiff was examined at SIU by Olysav and Froelich, who was an SIU orthopedic resident. (*Id.* ¶ 29; Pl.'s Resp. Froelich's LR 56.1(a) Stmt. ¶¶ 4-6.) Olysav recommended that plaintiff receive physical therapy for his shoulder, a recommendation that Migliorino approved. (Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶¶ 29-31.)

Plaintiff began physical therapy as recommended by Olysav in October 2008. (*Id.* ¶ 32.) On October 28, 2008, plaintiff was discharged from therapy. (*Id.* ¶ 35.)

On January 14, 2009, plaintiff was transferred to Stateville Correctional Center. (*Id.* ¶ 39; Pl.'s Stmt. Add'l Facts Opp'n Wexford's Mot. Summ. J. ¶ 55.)

Between April 17, and May 1, 2009, plaintiff visited the Stateville Health Care Unit three times complaining of shoulder pain. (*See* Pl.'s Ex. A, Medical Records at 46-47.) He was given Motrin for the pain and a recommendation to see an orthopedist. (*Id.* at 48.)

3

On July 31, 2009, plaintiff was examined by an orthopedist, Dr. Izoude, at University of Illinois Chicago. (*Id.* at 49.) Izoude concluded that plaintiff was "too far out for surgical intervention and would need "pain management and physical therapy." (*Id.*)

In this suit, plaintiff alleges that defendants' failure to treat his should surgically constitutes deliberate indifference to his serious medical need and/or medical malpractice.

## **Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I, plaintiff alleges a § 1983 Eighth Amendment claim against SIU, Olysav and Froelich. To defeat their summary judgment motion on this claim, plaintiff must first offer evidence that suggests SIU, Olysav and Froelich are "person[s] who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprived him of his Eighth Amendment rights. 42 U.S.C. § 1983. Plaintiff has not and cannot make that showing with respect to SIU or Olysav and Froelich in their capacity as its agents because SIU is not, as a matter of law, a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Ins. Corp. of Ir.,*

4

*Ltd v. Bd. of Trs. of S. Ill. Univ.*, 937 F.2d 331, 334 n.2 (7th Cir. 1991) (noting that SIU is a "state entity"). Therefore, defendants are entitled to judgment as a matter of law on these § 1983 claims.

Olysav and Froelich, individually, are persons within the meaning of § 1983, but they can be held liable only if the record suggests that they acted under color of state law. 42 U.S.C. § 1983. The Supreme Court has yet to decide "whether medical care provided to a prisoner in a private facility outside of the prison walls constitutes state action." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 672 (7th Cir. 2012). In the Seventh Circuit's view, however, a private actor who voluntarily assumes the state's responsibility to provide medical care to prisoners at any location should be deemed a state actor, but one who has "only an incidental and transitory relationship with the state's penal system" or "an attenuated relationship with the prisoner-patient" should not. *Id.*; *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827-28 (7th Cir. 2009).

Plaintiff offers no evidence that suggests Olysav and Froelich agreed to or did provide medical care to IDOC inmates on a regular basis. There is also no evidence that suggests these defendants had an ongoing physician-patient relationship with plaintiff. On the contrary, it is undisputed that plaintiff was seen by Olysav and Froelich only once. (Pl.'s Resp. SIU's LR 56.1(a) Stmt. ¶ 8.) Given the record, plaintiff has not created a genuine issue of fact as to whether Olysav and Froelich were acting under color of state law when they treated him. Thus, these defendants are entitled to judgment as a matter of law on the § 1983 claim plaintiff asserts against them.

In Count I, plaintiff also asserts a § 1983 Eighth Amendment claim against Wexford, Funk, Shute, Migliorino and Schaefer, who are amenable to suit under § 1983. *See West v. Atkins*, 487 U.S. 42, 55-56 (1988) (holding that a non-government actor who contracts with the state to provide constitutionally adequate medical treatment to inmates can be held liable for failing to do so under § 1983); (Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶¶ 1-6 (admitting that these defendants regularly

provide medical care to inmates).) To defeat the individual defendants' motion on this claim, plaintiff must offer evidence that suggests each defendant was deliberately indifferent to one of his serious medical needs, *i.e.*, was "aware of [his] . . . need[] and disregarded an excessive risk that a lack of treatment posed to [his] health." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (per curiam).

In his LR 56.1(b) Statement of Additional Material Facts, plaintiff offers no facts that suggest defendants Shute and Schaefer were personally involved in the acts and omissions of which he complains. (*See generally* Pl.'s Resp. Wexford's LR 56.1(a) Stmt. & Pl.'s Stmt. Add'l Facts.) Thus, Shute and Schaefer are entitled to judgment as a matter of law on Count I.

Plaintiff contends that Funk and Migliorino's deliberate indifference is evidenced by their failure to: (1) investigate Olysav's credentials and experience before referring plaintiff to him for treatment; (2) question Olysav about his treatment plan for plaintiff, even after plaintiff filed a grievance about it; and (3) obtain another orthopedic evaluation for him as the physical therapist recommended at the end of plaintiff's treatment in October 2008. (*See* Pl.'s Resp. Wexford's Mot. Summ. J. at 6-10.) There is no dispute, however, that Migliorino and Funk gave medical approval for inmates to see specialists, but did not personally choose the specialists to whom inmates were sent. (*See* Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶ 12; Defs.' Ex. H, Funk Dep. at 60-61; Pl.'s Ex. N, Brown Dep. at 20-21; Pl.'s Ex. V, Williams Dep. at 31-36; Defs.' Ex. C, Migliorino Dep. at 110-13.) Rather, though the record is not entirely clear, it appears that an IDOC employee chose local specialists from a list maintained by IDOC and, if the doctors on the list were unable to provide the necessary treatment, asked Wexford for a referral to an out-of-area physician. (*See* Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶¶ 13, 20, 25-30; Defs.' Ex. H, Funk Dep. at 60-61; Pl.'s Ex. N, Brown Dep. at 20-21; Pl.'s Ex. V, Williams Dep. at 31-36; Defs.' Ex. C, Migliorino Dep. at 110-13.) There is also no dispute that Funk and Migliorino deferred to Olysav's treatment plan because they had been

told he was a shoulder specialist. (*See* Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶¶ 27, 38; Defs.' Ex. H, Funk Dep. at 97-104, 112; Pl.'s Ex. N, Brown Dep. at 20-21; Pl.'s Ex. V, Williams Dep. at 31-36; Defs.' Ex. C, Migliorino Dep. at 110-13.) Moreover, the record shows that Migliorino left Wexford before plaintiff finished physical therapy and, though Funk remained, there is no evidence that he knew the therapy had been unsuccessful or that the therapist recommended that plaintiff be evaluated by an orthopedist. (*See* Wexford's Resp. Pl.'s Stmt. Add'l Facts ¶ 44; Pl.'s Resp. Wexford's LR 56.1(a) Stmt. ¶¶ 33-34.) In short, viewed favorably to plaintiff, the record does not support the inference that Funk and Migliorino were deliberately indifferent to plaintiff's serious medical need. Thus, they are entitled to judgment as a matter of law on plaintiff's § 1983 claim.

The same is true for Wexford, which can be held liable only if the record suggests that plaintiff was deprived of a constitutional right pursuant to one of its policies or practices. *Rodriguez,* 577 F.3d at 822. Because plaintiff has not offered evidence that suggests he suffered any constitutional deprivation, his claim against Wexford fails.

That leaves Count V, plaintiff's § 1983 claim against Acevedo. Plaintiff offers no evidence that suggests Acevedo knew about plaintiff's medical condition, had any involvement in choosing the physicians who treated him or a played any role in deciding the course of his medical treatment. Absent such evidence, Acevedo cannot be held liable under § 1983. *See Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.")

**State Law Claims**

In Counts II-IV, plaintiff asserts medical malpractice claims against SIU, Olysav and Froelich. Having dismissed all of the federal claims in this suit, the Court declines to exercise supplemental jurisdiction over these state law claims. *See* 28 U.S.C. § 1367(c)(3).

**Conclusion**

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to: (1) the claims plaintiff asserts against defendants Acevedo, Wexford, Funk, Migliorino, Shute and Schaefer, who are entitled to judgment as a matter of law; and (2) the federal claims plaintiff asserts against defendants SIU, Olysav and Froelich, who are entitled to judgment as a matter of law on those claims. Therefore, the Court grants the summary judgment motions of Acevedo, Wexford, Funk, Migliorino, Shute and Schaefer [docs. 162 & 173] and grants in part the summary judgment motions of SIU, Olysav and Froelich [docs. 167 & 170]. The Court declines to exercise supplemental jurisdiction over the state law claims plaintiff asserts against SIU, Olysav and Froelich, which are dismissed without prejudice to refiling in state court. This case is terminated.

**SO ORDERED.**  **ENTERED: June 25, 2012**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**